Dolly " Smith," Petitioner, *v.* Thomas " Smith," Respondent.

Domestic Relations Court of New York, Family Court, New York County,
September 10, 1942.

No appearances.

Panken, J.   Section 5 of the Domestic Relations Law, subdivision 3 thereof, places a marriage between an uncle and a niece in the category of an incestuous and void marriage.   That which is made void by legislative act may not be validated by a court, except and unless the statute runs counter to and is violative of the Constitution of the State of New York or the Constitution of the United States.

I must find as a matter of law that the Constitution of the State as well as the Constitution of the United States has no inhibiting provision to prevent legislative action in matters relating to marriage.   As a matter of public policy the law making marriages between an uncle and a niece incestuous is sound, despite the fact that the Old Testament does not prohibit the marriage of an uncle and a niece, although the Old Testament does prohibit the marriage of an aunt and a nephew. Whatever might be said about heredity, whatever might be believed as to hereditary influences, no doubt exists that inbreeding is productive of deterioration in species.   The doctrine holds good insofar as the human race is concerned, as well as it does

insofar as other species in the animal kingdom and as it does in the vegetable kingdom.

Whether or not the law is wise, and it is wise, this court has no power, it has not the right in law to set aside a legislative act unless that legislative act is on its face in violation of and controverting provisions of the Constitution.

The court nevertheless is confronted with a problem—added to the problem as to what happens to the woman who is the niece of the respondent—that of the three children. I should hold as a matter of law that even though these children were born as the result of the marriage which was void *ab initio*, the right to look to their father for maintenance and support, as well as to their mother if the father is unable to so do, cannot be put in question.

The court as it is presently constituted could never find itself discriminating between a child born in wedlock and a child born out of wedlock insofar as the responsibility and the obligation of a father for the support of a child is concerned. He who gives life ought to succor and care for that life. No child has ever asked to be brought into the world; certainly no child has ever asked to be brought into the world in a state of illegitimacy. These three children who are the result of this incestuous marriage cannot be deprived of their rights, nor can they be said to be illegitimate. Subdivision 5 of section 1135 of the Civil Practice Act reads: "If a marriage be declared a nullity as incestuous, a child of the marriage is deemed the legitimate child of both parents." (Cf. Dom. Rel. Ct. Act, § 101, subd. 6.)

The only remaining question to be decided by me is: "Am I in a position under the limited powers conferred upon this court to declare this marriage incestuous?" My declaration that it is an incestuous marriage may not be binding upon other courts, but my finding as a matter of fact that the marriage was void as a matter of law and was incestuous may be so found by me incident to the direction given to me by the State Legislature to make findings as to how, when, where and under what circumstances a person chargeable with the maintenance of another may be so charged.

The court orders that the respondent be required to contribute the sum of fifteen dollars weekly for the support of his two children who are his dependents. The court makes no provision for the support of the woman who bore these children for him since admittedly she was his niece, he her uncle, and the marriage violated subdivision 3 of section 5 of the Domestic Relations Law. No provision is made for the support of the oldest son. He is now over the age of seventeen and is self-supporting.